## THE TOLCHESTER BEACH IMPROVEMENT COMPANY *vs.* JOSEPH SCHARNAGL, BY HIS NEXT FRIEND.

*Liability of Carrier for False Arrest and Imprisonment of Passenger by Employee.*

A carrier is liable for an assault upon a passenger, or his wrongful arrest, by his agents and servants while acting within the scope of their duty.

Plaintiff, while a passenger on defendant's steamboat, was arrested without cause and put in a lock-up by an employee of the defendant, whose duty it was to enforce the ship's regulations among passengers.   This employee was also commissioned by the Governor as a special policeman, at the request of the defendant, by whom his compensation was paid.   In an action for false arrest and imprisonment, *held,* that the evidence in the case was sufficient to authorize the jury to find that the person making the arrest was an employee of the defendant and was acting within the scope of his duty in so doing.

*Held,* further, that the jury was properly instructed that their verdict should be for the plaintiff if they found from the evidence that while he as a passenger was behaving in an orderly manner, he was arrested by a person acting as an employee of the defendant, within the scope of his employment, and not as a State officer under his commission from the Governor.

*Decided February 16th, 1907.*

Appeal from the Superior Court of Baltimore (STOCK-BRIDGE, J.), where there was a judgment on verdict for the plaintiff for $500.

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that Freeburger on July 10th, 1905, was a State officer, appointed by the Governor under the law and held the commission offered in evidence and was on duty on said date on the steamboat "Louise" while she navigated the public waters of the United States from Baltimore City to Tolchester; and further find that on said date the said Freeburger was also an employee of the defendant company and as such employee was on duty on the steamboat "Louise" while she navigated the public waters of the United States from Baltimore City to Tolchester; then it is for the jury to decide from all the facts and circumstances in evidence, whether when the plaintiff Joseph, who was a passenger at the time, if they so find, was arrested by the said Freeburger, as testified by the plaintiff's witnesses, provided the jury find from the evidence that said Freeburger did arrest the plaintiff Joseph, while he was a passenger and behaving all the while as such passenger in an orderly, quiet and proper manner as testified to by plaintiff's witnesses, the said Freeburger was acting as an employee of the defendant within the scope of his employment or as an officer of the State under the commission offered in evidence; and if the jury find from the evidence that Freeburger did arrest the plaintiff Joseph, in the manner and form as testified by the plaintiff's witnesses and while said plaintiff was a passenger on the steamboat "Louise" and behaving himself all the while in a quiet and orderly manner as testified to by the plaintiff s witnesses, and that in so arresting the plaintiff Joseph, if they so find, Freeburger was acting as an employee of the defendant within the scope of his employment, if they so find, and not as a State officer under the commission offered in evidence if they so find, then the verdict of the jury should be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The Court instructs the jury that if they find from the evidence that the plaintiff, Joseph, after

he became on July 10th, 1905, a passenger on the steamer "Louise" behaved himself in an orderly and quiet manner and created no disturbance whatever, then his arrest by Freeburger, if the jury find said arrest was made as testified to by the plaintiff's witnesses, and was made by him while acting as an employee of the defendant in the scope of his employment was unlawful, and having been made on the defendant's steamboat "Louise" whilst the plaintiff, Joseph, a passenger, was entitled to be protected by the defendant against arrest by the defendant's own employees, if wrongfully made by them whilst they were in and about the performance of their prescribed duties, then the defendant is liable and the plaintiff entitled to a verdict. (*Granted.*)

*Plaintiff's 3rd Prayer.*—In assessing damages, if the jury find for the plaintiff, they are to take into consideration the nature of the force applied to the plaintiff, Joseph, his sense of indignity and humiliation, and award him such sum as under all the circumstances of the case they may deem a fair and reasonable compensation therefor. (*Granted..*)

*Defendant's 3rd Prayer.*—That the uncontradicted evidence in this case is, that the witness Freeburger was only a special policeman in his relation to the defendant and that he acted in no other capacity for the defendant as to the occurrence of July 10th, 1905, and therefore, their verdict must be for the defendant. (*Refused.*)

*Defendant's 4th Prayer.*—That if they find from the evidence that the plaintiff was guilty of disorder, and that the witness Freeburger in his conduct toward him only did what was reasonably proper and necessary to cause said disorder to cease and to be discontinued, then their verdict must be for the defendant. (*Refused.*)

*Defendant's 5th Prayer.*—That if they believe from the evidence that the witness Freeburger in his conduct towards the plaintiff acted in good faith, and only did that which he believed was reasonably necessary to maintain order upon the boat, then their verdict must be for the defendant. (*Granted.*)

*Defendant's 6th Prayer.*—That if they believe from the evi-

dence that the witness Freeburger in his conduct towards the plaintiff was acting as a commissioned officer of the State of Maryland and not as an employee of the defendant, then their verdict should be for the defendant.    (*Granted.*)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*James P. Gorter*, for the appellant.

While it is true that ordinarily the question of fact whether the person doing the wrong was acting in one capacity or the other is for the jury, yet if the whole evidence shows that the person so acting only held the one capacity, viz., that of special officer, and there is no evidence at all that he was in the employ of the defendant other than as such officer, then there is no question to be left to the jury, as the evidence is legally insufficient for them to find that the officer was acting as an employee of the defendant.

This is certainly so when the act complained of is not violent assault and battery, or even the use of excessive force in making an arrest, but only a case of false imprisonment, or malicious prosecution; and

In a case like this of false arrest or false imprisonment the defendant is not liable for the act of the wrong doer unless there is shown either express authority or subsequent ratification.

In the case of *Deck* v. *The B. & O.*, 100 Md. 168, the Court, in saying "whether he was acting in one capacity or other, is a question for the jury," relies upon the cases of *Dickerson* v. *Waldron*, 135 Ind. 507-526; *Brill* v. *Eddy*, 115 Mo. 597-605, and *Railway Co.* v. *Hackett*, 58 Ark. 387. An examination of these cases will disclose that in all of them the double and distinct capacities existed in the person of the wrongdoer.

In the case now under discussion, Freeburger was nothing but a special policeman, with absolutely no authority or no power or no duties, other than those derived from the com-

mission.  He never had been in the employ of the company
in any other capacity.  The company had no police depart-
ment.  It only asked for a policeman, to perform the duties
of such.  The testimony unquestionably establishes such to
have been the case, and the cross-examination of the witness
Freeburger, by the plaintiff's counsel, only emphasizes the
fact.

The case of *B. & O.* v. *Deck*, 102 Md. 674, seems but to em-
phasize our contention.  In that case the plaintiff, in his first
prayer, p. 674, asked for a verdict if the jury should find that
the defendant Steiner acted as *detective or as special officer*—evi-
dently thinking there was a right of recovery when acting as
special officer, provided the act was done when attemping to
drive trespassers from the train.  This Court said the prayer
was bad.  In the first place, because there was no evidence that
Steiner was so engaged, distinguishing it from the facts, when
the case was first presented to the Court in 100 Md. 168.

In a case like this, of false arrest or false imprisonment, the
defendant is not liable for the act of Freeburger, unless there
is shown either express authority or subsequent ratification.
The following cases support this proposition unless the fact
that the plaintiff was a passenger at the time of his arrest
would affect the question : *Turnpike Co.* v. *Green* 86 Md.  167;
*Barabasz* v. *Kabat*, 86 Md. 36 ; *Central Ry. Co.* v. *Brewer*, 78
Md.  394;  *National Bank* v. *Baker*, 77  Md. 464 ;  *Carter*  v.
*Howe*, 51 Md. 295.

The contention of the plaintiff is that, as the plaintiff was a
passenger at the time of his arrest the defendant is liable for
the wrongful act of Freeburger, because the defendant was
under obligation to protect its passengers, from any wrong or
injury.

This contention as applicable to the facts of this case is not
sound.  It will be admitted for the purpose of the argument
that—If the plaintiff, while a passenger, had been arrested by
a servant of the defendant, or at the instance or request of one,
while about the performance of his prescribed duty, the de-
fendant would be liable, because the plaintiff would be entitled

to be protected by the defendant against assaults and injuries by the defendant's own employees.   And so it is held in the case of *B. & O.* v. *Cain*, 81 Md. 105.

But the person who arrested or restrained the liberty of the plaintiff in the case at bar, was not a servant of the defendant. His only business and authority was that conferred upon him by the State of Maryland.   Nor did he act at the instance or request of any servant or employee of the defendant, nor is there any evidence in the record that any of the officers on the defendant's boat, or agents or servants of the defendant, had the slightest knowledge of the facts complained of in the case.   What Freeburger did, he did of his own volition, and his act could only be ascribed to his official capacity, for as far as the defendant is concerned he bore no other relation to it.   The law goes a step farther, and at the same time recognizes the obligation of the carrier to protect the passenger. Had an employee of the defendant been present he would have had no right to interfere with Freeburger in the exercise of his police powers.   *Fetter on Carriers of Passengers*, vol. 1, p. 244, sec. 101; *Jardine* v. *Cornell*, 50 N. J. 485; *Hershey* v. *O'Neill*, 36 Fed. Rep. 171; *Steinmier's case*, 72 Md. 318.

The defendant submits: (1) That Freeburger was a special police.   (2) That he had no other capacity.   (3) That the company is not bound for the wrongful act of the special police in a case of false imprisonment.   (4) That the fact that the plaintiff was a passenger does not affect the question, as the restraint to his liberty was not done at the instance or request of any employee of the defendant, nor was any such present to prevent the same, nor had he the right so to do had he been present.

*Thomas G. Hayes* and *John H. Grill*, for the appellee.

The capacity in which Freeburger committed the act complained of was that of an agent or servant of the appellant, acting as enforcer of its regulations among the passengers on board the Louise; and hence if such act was wrongful and injurious to the appellee, Joseph Schanagl, and committed

within the scope of Freeburger's employment, the appellant is liable and the plaintiff's first prayer was properly granted.

The evidence of Freeburger, the officer, in addition to the testimony of appellee's witnesses, conclusively shows that he was employed and paid by the appellant to enforce its rules and regulations among the passengers, while the Louise navigated the public waters between Baltimore and Tolchester. Freeburger admits that the appellee committed no breach of the peace; that he did not arrest him, but that his taking him from his company to the deck below was to advise and admonish him not to engage in a friendly romp or pull with his male companions; this prohibition must have been a rule or regulation of the appellant which he was enforcing. The commission of Freeburger offered in evidence clearly shows that it was only in cases of breach of the peace that he was authorized to act *officially* as a State officer.

The law as given by the Courts of this and other States as applicable to these officers, commissioned by the State, employed and paid by the company, shows conclusively that the act complained of, if it were the enforcement of a regulation, as it unquestionably was, was done by Freeburger in his capacity as the agent and servant of the appellant in enforcing its rules and regulations, and for which wrongful act the appellant is liable. "A police officer, by responding to the invitation of the regular agents of the company to aid in enforcing its *regulations*, becomes for that purpose, a special agent of the company, and for the conduct of such special agent, within the scope of his employment, the company is responsible. *Jardine* v. *Cornell*, 50 N. J. L. 485. See also *King* v. *Ill. R. Co.*, 69 Miss. 245; *Ill. Steel Co.* v. *Novak*, 84 Ill. App. 644; *Tolchester Co.* v. *Steinmier*, 72 Md. 317.

2. Whether the act of Freeburger in assaulting and arresting the appellee, Joseph Scharnagl, as stated in the declaration and plaintiff's first prayer, was "within the scope of his employment" as the *enforcer of the regulations* of the appellant, this Court has expressly decided, as is submitted to the jury in plaintiff's first prayer, was a question for the determination of

the jury.  *Deck* v. *B. & O. R. R. Co.*, 100 Md. 182; *Con. R. Co.* v. *Pearce,* 89 Md. 503.    See also *Magar* v. *Hammond* (N. Y.) 3 L. R. A. (N. S.) 1038.

The exact question, as to whether a carrier is liable to a passenger who has been unjustifiably and wrongfully arrested by a servant of the carrier, in the scope of his employment, without antecedent authority from the carrier to the servant to make the arrest, or subsequent ratification of the same, has been expressly decided by the Court of Appeals of New York. This Court decided that the carrier is liable under such circumstances. *Hamel* v. *Ferry Co.*, 25 N. Y. S. R. 154, affirmed in 125 N. Y. 707; *Mulligan* v. *N. Y. R. Co.*, 14 L. R. A. 796.

This Court has twice in the two Deck cases positively decided that the capacity in which a special officer, commissioned as was Mr. Freeburger, and employed, paid and dischargeable by the company, does the act complained of, is always for the determination of the jury.    100 Md. 185; 102 Md. 675.

The relation of passenger and carrier existing between appellee and appellant, made it the prime duty of the latter to protect the former from unjustifiable assault and arrest of its agent and servant.    *Indianapolis R. Co.* v. *Cooper*, 33 N. E. 219; 2 *Wood Ry. Law*, sec. 315; *Craker* v. *Railroad Co.*, 36 Wis. 657; *Goddard* v. *Railway Co.*, 57 Me. 202; *Bryant* v. *Rich*, 106 Mass. 180; *Railway Co.* v. *Flexman*, 103 Ill. 546; *Stewart* v. *Railroad Co.*, 90 N. Y. 588; *Cain* v. *Railway Co.*, 39 Minn. 297; 39 N. W. 635; *Dillingham* v. *Anthouy* (Tex. Sup.) 11 S. W. 140; *Dwinelle* v. *Railway Co.*, 120 N. Y. 117; 24 N. E. 319; *Railway Co.* v. *Jackson*, 81 Ind. 19; *Railway Co.* v. *Kelly*, 92 Ind. 372; *Railway Co.* v. *Savage*, 110 Ind. 156; 7 N. E. 85; *Duggan* v. *B. & O. R. Co.*, 159 Pa. 248; 28 Atl. 182; *Central R. Co.* v. *Peacock*, 69 Md. 262.

BURKE, J., delivered the opinion of the Court.

This is an action for trespass for assault, false arrest and imprisonment.    The declaration alleges that on the 10th of July, 1905, the plaintiff, Joseph Scharnagl, purchased a ticket

from Baltimore to Tolchester and return, and became a passenger on the defendant's steamboat Louise; that at said time the defendant was a common carrier of passengers and navigated the Patapsco River and Chesapeake Bay between the city of Baltimore and Tolchester in Kent County; that while a passenger on said steamboat en route to Tolchester the plaintiff was violently seized and arrested by a servant aud agent of the defendant, and taken from the cabin of said steamboat and confined in a lockup on said steamboat; that the said plaintiff when arrested as aforesaid was demeaning himself quietly and orderly with the other ladies and gentlemen who were of his party, and upon inquiry made of said servant, as he was being taken from the cabin to the lockup, why he was arrested, the only answer given him was that it was all right; that the plaintiff, after being placed in said lockup and kept there for sometime was released, and then informed that a mistake had been made and he was not the person intended to be arrested; that his arrest aforesaid was witnessed by a large number of passengers who were on said steamboat, and by said arrest and confinement in said lockup he was greatly mortified and humiliated and suffered great mental pain and anguish, and was otherwise damaged.

The defendant pleaded the general issue, and the case was tried upon the joinder of issue upon that plea, and resulted in a judgment for the plaintiff, from which this appeal was taken. One exception only—that to the ruling of the Court upon the prayers—is presented by the record.

It is not disputed that at the time of the commission of the wrongs complained of, the defendant was a common carrier, and that the plaintiff was a passenger for hire aboard its steamboat Louise as stated in the declaration. The relation of passenger and carrier being shown to exist between the appellant company and Joseph Scharnagl, the law imposed upon the carrier a primary duty to protect him during the existence of that relation, and if he were unjustifiably assaulted or arrested, or imprisoned whilst that relation continued by the servants or agents of the carrier, while acting within the scope

of their duty, the carrier would be liable. This proposition is so firmly settled in this State and elsewhere that it seems needless to quote authorities to support it. In *B. & O. R. R. Co.* v. *Cain*, 81 Md. 105, which was an action for false imprisonment wherein it appeared that the plaintiff was arrested and imprisoned whilst a passenger by order of the defendant's conductor this Court, speaking through JUDGE McSHERRY, said: "If the plaintiff had been guilty of no breach of the peace, his arrest at the instance of the conductor was unlawful, and having been made in the defendant's depot whilst the plaintiff, a passenger, was still entitled to be protected against assaults and injuries by the defendant's own employees, if wrongfully made by or at the request of the defendant's own servants whilst they were in and about the performance of their prescribed duties, the master would be liable." In *Central Railway Company* v. *Peacock*, 69 Md. 262, the Court said: "The Supreme Court of the United States, in *New Jersey Steamboat Company* v. *Brockett*, 121 U. S. 645, decided unequivocally that the carrier of passengers must protect his passengers from the violence of the carrier's employees, as also from that of other passengers; but there is nothing in the decision in conflict with the doctrine that to render the carrier liable the employee must be at the time acting in the employment of the railroad, and within the line of his duty, and the decision assumes that the party is a passenger when injured; for that was the fact in the case." The statement of the law by this Court is in harmony with direct decisions in other jurisdictions. *Indianapolis R. Co.* v. *Cooper*, 33 N. E. 219; *Duggan* v. *B. & O. R. R. Co.*, 59 Pa. 248.

Scharnagl being a passenger for hire, and the defendant's duty towards him being established, we will now inquire whether there is found in the record evidence tending to prove the allegations of assault, arrest and imprisonment found in the declaration. Upon this branch of the case the testimony, as usual, is conflicting, but with the weight and credibility of the evidence this Court has nothing to do, those matters being committed by the law to the sole and exclusive judgment

of the jury.   The question which this Court is called upon to
decide is this:   Assuming the evidence offered by the plaintiff
to be true, is it legally sufficient to support the averments of
the *narr?*   The appellee, Joseph Scharnagl, testified that he
was a resident of Baltimore City, that at the time of the insti-
tution of the suit was twenty years of age; that on the after-
noon of the 10th of July, 1905, he purchased a ticket at the
office of the defendant company on Light street in Baltimore
City for a trip by the defendant's steamboat Louise to Tol-
chester; that after getting his tickets he went aboard the
boat; that after the boat had gotten a little distance past Fort
McHenry on its way to Tolchester the wrongs complained of
were committed, and are thus described by the appellee in his
testimony: "Just about abreast of Fort McHenry, as I was
standing with this company of mine listening to a party play-
ing on the piano, and a few other company, but not of mine,
singing, and I was standing there thinking of nothing, when
here comes this officer up and grabs me by the neck and
wrist, and as he takes me to the steps, I says, what's the
trouble, and he says, never mind what's the trouble, you
come with me.   He goes down on the deck below, and that
is where these witnesses were standing; they don't see me put
in the lock-up; it was a dark place, and he unlocked the door
and throws me in as if I was a dog.   I was in there fifteen or
twenty minutes.   I don't know whether the officer went out
or not, but he came back and unlocked the door, and as he
unlocked it he grabbed hold of me.   He stood there and
looked at me, and he said: Ain't you the gentleman I put off
this boat for being drunk this morning?   And I said, you
must be mistaken; and he said, don't contradict me that way;
let me see your ticket; and I showed him the ticket, and then
he released me, and I went up on deck; and as I was on deck
every now and then I could hear a person say, 'there goes the
young gentleman that was put in the lock-up.'   How would
any body else like to be done that way."   (Record, 4).

   This testimony as to the assault and arrest is corroborated
by four witnesses who were present, and, if true, a most un-

warranted and humiliating outrage was committed upon the
the plaintiff.   The evidence shows that this maltreatment was
inflicted upon the plaintiff by John Freeburger, and in order to
hold the appellant liable for his act, the plaintiff was bound to
prove, under the principles stated, to the satisfaction of the
jury, first, that Freeburger was an employee of the defendant,
and secondly, that he was acting within the scope of his duty
as such employee.

The testimony shows that Freeburger occupied a dual
capacity on the boat.   He was commissioned by the Gov-
ernor as a policeman, under sec. 403, Art. 23, Code, 1904,
for the protection of the appellant's property, and for the
preservation of peace and good order on its premises.   He
was recommended to the Governor for appointment by the
appellant, his compensation was paid by it, and he was dis-
chargeable by it in the manner pointed out by sec. 407 of
that Article.   He undertook the enforcement of all rules,
orders and regulations of the appellant among the passengers
on the boat, and as special officer he enforced all orders, rules
and regulations that the company might promulgate and
communicate to him, connected with the proper deportment
of passengers.   This state of facts was amply sufficient to
have taken the case to the jury upon the question as to
whether he was acting at the time as an employee of the
appellant, and within the scope of his employment.   *Tol-
chester Beach Co.* v. *Steinmier*, 72 Md. 317; *Deck* v. *B. & O.
R. R. Co.*, 100 Md. 168; *B. & O. R. R. Co.* v. *Deck*, 102
Md. 669.

The first, second and third prayers of the plaintiff, which
will be set out in the report of the case, are based upon cor-
rect legal principles, and submitted the case fairly to the jury.
The defendant's first, second and third prayers sought to
withdraw the case from the consideration of the jury, and
were properly refused.   There was no evidence to support
the hypothesis of the defendant's fourth prayer, and for this
and other reasons it was rightly rejected.   The defendant's
fifth, sixth, seventh, eighth and ninth prayers, which were

granted, put its defense fully before the jury. The fifth prayer was most favorable to the defendant, and announced a principle which we are not to be understood as approving. Finding no reversible error in the rulings, the judgment will be affirmed.

> *Judgment affirmed with costs to the appellee.*