PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY *vs.* HENRY M. GREEN.

*Assault and Battery—Liability of Railway Company for Assault by Employee Who Was Also a Peace Officer— Punitive Damages—Pleading—Evidence.*

A person who enters the waiting-room of a railway station, intending to take a train, becomes thereby a passenger, and as such is entitled to maintain an action against the railway company for an assault upon him by an employee of the company acting within the scope of his employment.

When an assault is committed by a person who is an employee of a railway company, and also a peace officer of the State or municipality, the question as to the capacity in which he was acting at the time of committing wrong is generally one for the jury.

The mere fact that the plaintiff was assaulted and arrested by an officer or agent of a railway company does not render the company liable therefor. It must also be shown that the officer was at the time acting within the scope of his employment. Consequently a declaration which alleges that mere fact is bad on demurrer.

Plaintiff, in an action of assault, is not entitled to recover punitive damages merely because the unlawful act was done deliberately and with unnecessary violence. To entitle one to such damages there must be an element of fraud, or malice, or evil

intent, or oppression, entering into and forming a part of the wrongful act.

When the declaration alleges that the plaintiff was wrongfully assaulted and beaten by defendant's servant, evidence that he was also falsely imprisoned is not admissible; nor evidence that the jail in which he was put was cold and wet.

In an action against a railway company for assault and battery, by its employee who arrested plaintiff, evidence that that employee had made other arrests is not admissible.

In such action, evidence is admissible to show that the employee was also a peace officer, since the question in the case was whether at the time of the assault he was acting as a peace officer, or as an employee of the defendant.

*Decided January 13th 1909.*

Appeal from the Circuit Court for Kent County (ADKINS and HOPPER, JJ.).

*Plaintiff's 1st Prayer.*—If the jury believe from the evidence that the plaintiff on or about the fifth day of March, in the year nineteen hundred and seven, entered the waiting room of defendant's station with the intention of taking passage on one of its trains, he was then a passenger of the defendant and it was bound to exercise all reasonable care to protect him from personal insult, injury and abuse; and if they shall find that the plaintiff while in defendant's said station was, without any just cause, assaulted and beaten by one of defendant's officers, agents or employees, then the plaintiff is entitled to recover. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury believe from the evidence that the plaintiff on or about the fifth day of March, in the year nineteen hundred and seven, was a passenger in defendant's station at Havre de Grace, awaiting the arrival of one of its trains in which he intended to take passage for Elkton, then he was entitled to protection by the defendant from personal insult and injury; and if the jury find that the

plaintiff while a passenger as aforesaid, was unlawfully assaulted and beaten and imprisoned by one of defendant's officers, agents or employees in charge of its said waiting room, then the plaintiff is entitled to recover.   (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find for the plaintiff they should award the plaintiff such sum as damages as will compensate him for the injury to his person, feelings and character arising from the unlawful act of the defendant; and if they believe that the said unlawful act was done deliberately and with unnecessary violence then they may give such exemplary damages as they may consider a proper punishment for the conduct of the defendant acting through its officer, agent or employee.   (*Granted.*)

*Defendant's 1st Prayer.*—That it was the duty of the plaintiff to behave in a quiet and orderly manner and to observe all reasonable rules of the defendant company while waiting in the station to become a passenger on the train of the defendant and that it was the duty of the station officer to maintain order in the waiting room at the station, and to require all persons to observe all reasonable rules of the defendant company exhibited in said waiting room and if the plaintiff was acting in a disorderly manner in said waiting room or failed to observe the reasonable rules prohibiting smoking therein the station officer could eject him from the waiting room, and if the jury find that the plaintiff was acting in a disorderly manner, or failed to observe the rules of the company prohibiting smoking in the waiting room, if the jury shall find such rules were exhibited in said room, and was warned by the station officer that he must desist from smoking and the station officer was unable to expel the plaintiff from the waiting room by reason of the resistance of the plaintiff and his companions, who assaulted the station officer, then the station officer was justified in arresting the plaintiff and placing him in the city lockup, to be tried for said disorderly conduct and that the defendant company is not liable for the arrest and imprisonment and the verdict of the jury must be for the defendant; provided the jury shall

further find that the officer in making the arrest used no more force than was reasonably necessary. (*Granted.*)

*Defendant's 2nd Prayer.*—That it was the duty of the plaintiff to behave in a quiet and orderly manner in the waiting room in the station, and that it was the duty of the special officer to maintain order in said waiting room and to require all persons to observe the rule prohibiting smoking therein, and if the plaintiff was acting in a disorderly manner in said room or resisted the special officer in the discharge of his duty in enforcing the rules prohibiting smoking in the waiting room, by seizing said officer to prevent him from ejecting Ernest Moore from the waiting room for refusing to observe the rule prohibiting smoking in said room, then the said special officer was justified in arresting the plaintiff for disorderly conduct and placing him in the city lockup or prison to be tried for disorderly conduct by the proper authorties of the city, and for this arrest and imprisonment the defendant company would not be liable and the verdict of the jury must be for the defendant; provided the jury shall further find that the officer in making the arrest used no more force than was reasonably necessary. (*Granted.*)

*Defendant's 3rd Prayer.*—If the jury find the plaintiff, with one Ernest L. Moore and a large number of others were members of an amateur theatrical troop at Elkton and as such gave a performance at the opera house in the city of Havre de Grace and after said performance returned to the station of defendant's railroad at said city to take the midnight train to Elkton, and entered the waiting room of said station, and that while there the said Moore violated the rules and regulations of defendants against smoking in said room, if the jury shall find such rules and regulations existed.

And shall further find that one Milton M. Baldwin was a watchman of defendants charged with the duty of caring for the property of the defendants at said station and enforcing its rules and regulations at said station and of preserving order and decorum among the passengers therein.

And shall further find that said Baldwin in the performance of his said duties remonstrated with said Moore as to his violation of said rules against smoking and that thereupon said Moore assaulted said Baldwin, and that said Baldwin thereupon attempted to arrest said Moore and eject him from said station and that thereupon the plaintiff assaulted said Baldwin, and that thereupon and therefore said Baldwin arrested the plaintiff and confined him in the lockup of said city; and that this occurred about 11.30 o'clock at night when no. magistrate could reasonably be procured and that the plaintiff was confined in said lockup until the next morning when complaint of the plaintiff's conduct was made before a magistrate of said city by said Baldwin and a hearing had thereon and plaintiff was discharged, that then the plaintiff cannot recover in this case; provided the jury shall further find that the officer in making the arrest used no more force than was reasonably necessary. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury find that the witness Baldwin was an employee of the defendant charged with maintaining order in its passenger station at the city of Havre de Grace, and that said Baldwin while in the discharge of his duties in said station was assaulted by the plaintiff or that the plaintiff was guilty of disorder and smoking in said station that then said Baldwin was justified in arresting the plaintiff without warrant and confining him in the lockup of said city until a magistrate could be procured and a charge preferred against him, and shall find that this was done as soon as it reasonably could be, then for this arrest and confinement the defendant is not liable and the verdict must be for the defendant; provided the jury shall further find that the officer in making the arrest used no more force than was reasonable necessary. (*Granted.*)

*Defendant's 5th Prayer.*—That if the jury finds that the plaintiff, when he was in the waiting room of the station at Havre de Grace, was acting in a disorderly manner, that then the conduct of the plaintiff justified the special officer in requesting the Police Officer Kelley, who was present, to

arrest him at once, without warrant, on the charge of dis-
orderly conduct; and for this arrest the defendant company
is not liable, and the verdict of the jury must be for the de-
fendant. (*Rejected.*)

*Defendant's 6th Prayer.*—If the jury find that the witness
Baldwin was a police officer or deputy bailiff of the City of
Havre de Grace, and that in such capacity he made the arrest
complained of, then the defendant is not liable and the ver-
dict must be for the defendant. (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY,
JJ.

*Marion deK. Smith* (with whom was *L. Marshall Haines*
on the brief), for the appellant.

*William S. Evans* and *Omar D. Crothers* (with whom was
*Hope H. Barroll* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

This is an action for assault and battery and false arrest
and imprisonment brought by Henry M. Green against the
Philadelphia, Baltimore and Washington Railroad Company.
The suit was instituted in the Circuit Court for Cecil County,
and was removed to the Circuit Court for Kent County. It
was tried in that Court upon a declaration which contained
two counts. The first count charged that the defendant is a
corporation owning and operating a railroad for the carriage
of passengers for hire between certain points in this State,
and for the accommodation of persons intending to become
passengers on its road it had provided a waiting room near
its tracks in the City of Havre de Grace; that the plaintiff
entered said waiting room on the 5th of March, 1907, for the
purpose of taking passage on one of the defendant's trains,
and that while in "said waiting room for the purpose afore-
said one of the defendant's agents, officers or employees then

and there in charge of said waiting room then and there with
force and arms did violently assault and unlawfully and
maliciously did cast and throw the plaintiff upon the floor of
said waiting room, and did then and there beat, wound and
ill-treat the plaintiff, etc."

The other count, which is called in the record an addi-
tional count and which will be so designated in this opinion,
after setting forth introductory averments similar to those
stated in the first count, charged that while the plaintiff was
in the waiting room of the defendant on the night of March
5, 1907, for the purpose of taking passage on one of the
defendant's trains to Elkton, Maryland, "an officer or agent
of the said defendant and in its employ, violently assaulted
the plaintiff and falsely arrested and imprisoned the plaintiff
in the jail of the City of Havre de Grace aforesaid, in con-
sequence whereof the said plaintiff suffered great distress of
mind and severe bodily harm and injury and his reputation
in the community where he lives has been greatly injured
thereby."

The defendant demurred to each of these counts. The
Court overruled the demurrers and issue was joined upon the
defendant's plea of not guilty, and the case proceeded to trial,
which resulted in a verdict and judgment in favor of the
plaintiff for one thousand dollars. The defendant has brought
this appeal. The record contains four bills of exception re-
served by the defendant during the course of the trial. Two
of these relate to the admission of evidence; one to the action
of the Court in striking out certain testimony, and one to the
ruling of the Court upon the prayers and certain special ex-
ceptions submitted at the close of the whole testimony.

The record contains more than five hundred pages of testi-
mony, and upon the vital questions of fact involved is very
conflicting. We are not required to enter upon a minute ex-
amination and analysis of this irreconcilable testimony for
the purpose of discovering the real facts of the occurrence to
which it relates, or of deciding upon which side is found the
preponderance of the proof. It was exclusively within the

province of the jury to determine these questions. It is sufficient, in order to dispose of the legal questions raised on the record, to give a general outline of the evidence adduced by the parties to sustain their respective contentions.

The plaintiff offered evidence tending to prove the following facts: That he was a member of an amateur dramatic club, composed of young people of both sexes of the town of Elkton, formed for the purpose of giving entertainments to raise funds for the benefit of Washington Camp of the Patriotic Order Sons of America; that on the 5th of March, 1907, about twenty-four members of this club went from Elkton to Havre de Grace by defendant's train, and gave an entertainment at night in the Opera House at that place; that after the close of the exhibition the plaintiff, with other members of the company, went to the station of the defendant about ten o'clock P. M. to take a train back to Elkton; that while he was occupying one of the benches in defendant's waiting room and behaving in a quiet and orderly manner he observed Milton Baldwin, an officer of the defendant, approach Earnest Moore, another member of the theatrical troupe, seize him and pull him from the bench upon which he was sitting in the waiting room, throw him upon the floor and place his knee upon his breast; that he stepped over to Baldwin and asked him what Moore had done and what he was going to do to him, and that Baldwin, without replying, struck him over the shoulders with an officer's club, knocking him to the floor; that he got up, went back to his seat and sat down; that afterwards, while standing in the station with his hands in his pockets, Baldwin directed Richard Kelley, a Deputy Sheriff of Havre de Grace, to arrest him; that Kelley did arrest him and handcuff him to Moore and both he and Moore were taken by Baldwin and Kelley to the jail in Havre de Grace and locked up; that Baldwin had the key to the lockup and personally placed plaintiff and Moore in the cell; that the cell in which they were confined was cold, wet, and uncomfortable, and that they were detained therein until the afternoon of March 6th when they were discharged;

that in consequence of the wet and unfit condition of the cell the plaintiff contracted a severe cold, and was confined in his house for several days in charge of a physician. The evidence offered in behalf of the plaintiff tended to show that he was not smoking in the waiting room, and that he was conducting himself in a proper manner and that the treatment to which he was subjected by Baldwin was utterly unwarranted and was a gross outrage upon him.

The evidence on the part of the defendant tended to show that while the members of the troupe were in the station, or waiting room, on the night mentioned, waiting for a late train to take them back to Elkton, the plaintiff and Earnest Moore began smoking cigarettes in the main waiting room in violation of the rules and regulations of the railroad company; that these rules were indicated by "no smoking" signs hung upon the walls of the room; that the plaintiff and Moore were warned by Baldwin not to smoke, and upon the refusal of Moore to stop smoking Baldwin attempted to eject him from the room; that Moore assaulted Baldwin and was placed under arrest; that the plaintiff seized Baldwin by the shoulders and got upon his back to prevent him from putting Moore out of the room, and for the assault and interference Baldwin caused the arrest of the plaintiff and placed him in the lockup where he remained until the next day.

Baldwin was an employee of the defendant. He had formerly had charge of the flower gardens along the line of the road from Philadelphia to Washington, and later was put in charge of the freight house at Havre de Grace. A few months before the matters complained of in this case he was appointed night watchman at the new passenger station of the defendant at Havre de Grace. He had charge of the grounds, station, furnace and baggage at night. He had strict orders to stop smoking in the waiting room, and it was his duty to stop any general disorder around the station. Shortly after his appointment as night watchman he was appointed by the Mayor of Havre de Grace as a special officer of the Pennsylvania Railroad, and qualified as such before a Justice of the

Peace, and was given a certificate of his appointment, and thereafter acted as such officer under that appointment. These are all the facts that need be stated to enable us to dispose of the questions presented by the appeal.

Assuming the plaintiff's evidence to be true, the principal question in the case is whether the defendant is liable for the acts of Baldwin complained of in the declaration. The statement of the rules of law upon this question will necessarily determine the legal sufficiency of the declaration. By the undisputed evidence the plaintiff was a passenger of the defendant at the time 'the alleged trespasses were committed. He had entered a room provided by the defendant company for the accommodation of passengers to wait for a train to take him to his home. This under all the authorities establishes the relation of carrier and passenger. The rule is well settled that a person is a passenger who enters upon the depot grounds for the purpose of taking passage on the train of the carrier. The fare does not have to be paid, nor the train entered; but the person must merely enter within the control of the carrier at the depot through the usual channels of business with the intention of becoming a passenger by either paying fare before, or after entering the train. *B. & O. R. R. Co.* v. *Chambers,* 81 Md. 384. As a passenger he was entitled to protection against all wrongs done by the employees of the defendant, and for such wrongs done by them whilst they were engaged in and about the performance of their prescribed duties, the master would be liable.

The plaintiff was required to show, as a condition precedent to his right to recover, first, that the wrongs sued for were done by an agent or employee of the defendant; secondly, that the employee was acting at the time within the scope of his employment. Without legally sufficient evidence tending to establish these two facts no case of this nature should be submitted to the jury, and, when submitted, no verdict against the defendant should be rendered unless the jury are satisfied of the existence of these essential facts. These principles are too firmly settled by the decisions in this

Court to admit of dispute. *Carter* v. *The Howe Machine Company,* 51 Md. 290; *Central Railway Company* v. *Peacock,* 69 Md. 263; *Deck* v. *B. & O. R. R. Co.,* 100 Md. 168; *B. C. & A. Ry. Co.* v. *Twilley,* 106 Md. 445; *Tolchester Co.* v. *Scharnagl,* 105 Md. 199; *B. C. & A. Ry. Co.* v. *Ennalls,* 108 Md. 75.

It has become a common practice for certain corporations to have some of their employees appointed as special officers to protect their property and to maintain order upon trains and around the station. In such cases the question as to the capacity in which the servant was acting at the time of committing the wrong sued for is for the jury to decide. We said in *Deck's Case, supra,* that the question as to whether the act of the servant complained of is within the scope of his duty while acting in the furtherance of his master's business is generally to be determined by the jury as a matter of fact and not by the Court as a matter of law. In *Scharnagl's Case, supra,* where a passenger had been assaulted, arrested, and imprisoned by a servant of the defendant company and who was also a commissioned officer of the State, we said, in discussing the liability of the company for the acts of its servant, that "the relation of passenger and carrier being shown to exist between the appellant company and Joseph Scharnagl, the law imposed upon the carrier a primary duty to protect him during the existence of that relation, and if he were unjustifiably assaulted or arrested, or imprisoned while that relation continued by the servants or agents of the carrier, while acting within the scope of their duty, the carrier would be liable." In *Central Railway Company* v. *Peacock, supra,* it is said: "The Supreme Court of the United States, in *New Jersey Steamboat Company* v. *Brockett,* 121 U. S. 645, decide unequivocally that the carrier of passengers must protect his passengers from the violence of the carrier's employees, as also from that of other passengers; but there is nothing in the decision in conflict with the doctrine, that to render it liable the employee must be at the time acting in the employment of the railroad, and within the line of his

duty, and the decision assumed that the party injured is a passenger when injured; for that was the fact in the case."

Tested by these rules the first count of the declaration is sufficient as it shows that the trespasses were committed upon a passenger by an employee in charge of the waiting room of the defendant company. This, under the authorities cited, sufficiently shows that the wrongs sued for were done by a servant of the defendant acting within the scope of his duties. The demurrer to that count was properly overruled. The additional count is clearly bad. It seeks to make the company liable from the *mere fact* that the plaintiff was assaulted, arrested, and imprisoned "by an officer, or agent of said defendant and in its employ" while he was a passenger. This, under *Peacock's Case, supra,* and other cases, is not sufficient, and, therefore, the demurrer to that count should have been sustained, and for this reason the plaintiff's first prayer should not have been granted. The plaintiff's second prayer would have been proper had there been in the case a good count under which the plaintiff could have have recovered for the false arrest and imprisonment complained of; but as there was no such count in the declaration it was error to have granted that prayer.

The plaintiff's third prayer is upon the subject of damages, and that part of the prayer which states the rule for the allowance of exemplary damages is bad. It advised the jury that they might allow exemplary damages if they found the "unlawful act was done deliberately and with unnecessary violence." It appears to be well settled in this State that mere deliberateness and unnecessary force or violence is not the test of punitive damages. This Court in the case of *P. W. & B. R. R. Co.* v. *Hoeflich,* 62 Md. 307, has stated the rule under which punitive damages may be allowed in cases of this kind. In discussing a prayer substantially like the one we are considering, JUDGE ROBINSON said: "The force and deliberation with which the wrongful act is done, are not necessarily the tests by which the question of punitive damages is to be determined. On the contrary, to entitle one

to such damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example, or warning to others. But where the act, although wrongful in itself, is committed in the honest assertion of a supposed right, or in the discharge of duty, or without any evil or bad intention, there is no ground on which such damages can be awarded. In *Phila., Wilm. and Balt. Railroad Company* v. *Quigley,* 21 Howard, 202, 214, Mr. Justice Campbell says: 'Wherever the injury complained of has ben inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in a spirit of mischief, or of criminal indifference to civil obligations.' And in the still later case, in the same Court, of *Milwaukee Railroad Company* v. *Arms et al.,* 91 U. S. 489, 493, Mr. Justice Davis said: 'Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them * * * The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages.' We might multiply the cases on this subject if necessary, all concurring that exemplary damages are awarded as a punishment for the evil motive, or intention with which the unlawful act is done, and as a warning or example to others."

There was error in the ruling embraced in the first exception, as there was no count in the declaration upon which the

plaintiff was entitled to recover for the alleged false imprisonment. Had there been such count the evidence embraced in this exception would have been properly admissible. It is true that ordinarily a defendant could not be held liable for the manner in which public officials treat persons committed to their custody; but under the facts in evidence the suffering endured and the treatment received by the plaintiff in the lockup would have been proper for the jury to consider. Baldwin is shown to have had control of this jail and knew its condition when he placed the plaintiff in the cell, and if the master was responsible, under the rules stated for the acts of the servant, we see no good reason why the evidence as to the condition of the cell would not have been admissible. It would have been clearly competent, under the authority of *Hoeflich's Case, supra,* upon the question of punitive damages.

There was reversible error in the rulings in the second and third exceptions. The witness, Morrison was asked whether Baldwin had made other arrests during the time of his employment by the defendant and prior to March 5, 1907. The purpose of this evidence, it is said, was to show that Baldwin was acting within the scope of his duty at the time he arrested the plaintiff. It is difficult to see how this testimony can have the slightest tendency to prove the facts sought to be established. When these arrests were made, or under what circumstances, or whether Baldwin had authority to make them does not appear, and the admission of such testimony was calculated to do the defendant substantial injury. It is said however, that the defendant was not damaged by the admission of this testimony, because it was subsequently proved that Baldwin had arrested other people and placed them in the lockup. This class of testimony does not fall within the principle so often announced that the Court will not reverse the judgment where competent evidence favorable to the plaintiff's case has been first excluded, and afterwards admitted, because in such cases it is apparent that no injury

has been done.   The defendant in this case has a right to stand upon his exception to the admission of the testimony.

Why the Court struck out the testimony offered to show that Kelley and Baldwin were public officers is not shown by the record.   Baldwin was, however, acting as a special officer under the belief that he was properly appointed.   The validity of his appointment was an entirely collateral matter.   The real question was in what capacity he was acting at the time of the assault alleged, whether as a servant of the defendant or as a peace officer under what he regarded a valid appointment and qualification.   This was a question for the jury, and the evidence striken out should have remained in the case as reflecting upon that question.   For this reason the plaintiff's special exceptions to the defendant's fifth and sixth prayers should not have been granted.

The defendant's special exceptions to the plaintiff's third prayer was property overruled, as there was evidence, if believed by the jury, which would have authorized them in their discretion, under proper instructions, to award exemplary damages.   There was no error in refusing the defendant's fifth and sixth prayers, as it got the full benefit of all the defenses to which it was entitled under its granted prayers.   This disposes of all the questions presented by the appeal.   For errors committed in overruling the demurrer to the additional count of the declaration, and in granting the plaintiff's first, second and third prayers, and in the rulings covered by the first, second and third exceptions the judgment will be reversed.

*Judgment reversed with costs and new trial awarded.*