# FRANKLIN LEE MINOR v. STATE OF MARYLAND

[No. 188, September Term, 1968.]

*Decided February 11, 1969.*

*James F. Garrity* (*Leonard E. Wilson* on the brief) for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On the night of December 29, 1967, George Roger Bouchelle, Treasurer of the Maranatha Baptist Church, Inc., was robbed at gunpoint in his home in North East, Cecil County, Maryland. The sum of $1,277.16, belonging to the church, was taken and approximately $18.00 of his own money. Neither Mr. Bouchelle nor his wife, who was present at the crime, were able to identify the malefactors, and described them as a male Negro and a white male with a stocking over his head.

The appellant, Franklin Lee Minor, and his wife were ar-

rested in Salisbury, Maryland, on the basis of information given to the police by Martin Blizzard, one of the perpetrators who turned State's witness. After trial by jury in the Circuit Court for Cecil County, the appellant was found guilty of robbery with a dangerous and deadly weapon and sentenced to fifteen years under the jurisdiction of the Department of Correction, from which conviction he appeals.

A neighbor and niece of the Bouchelles, Arlene Dean, testified that she saw a car going up and down the road on which she and the Bouchelles live on the night of December 28, 1967 and again on the night of December 29th. On each occasion, there were four people in the car, three males and a blonde female. Although she could not identify the appellant as one of the occupants, she did testify that his hair looked like the hair of one of the occupants of the car. Mrs. Dean testified that when she saw the car enter her uncle's lane, she called the police. She then saw a car go down the road with just the girl in it.

Sergeant Elwood Stacy of the Maryland State Police testified that appellant made an inculpatory statement while he was in custody and after he had been advised of his rights.

Martin Blizzard was called as a witness for the State and his testimony was substantially that he was one of four persons who planned and executed the robbery; that the appellant was one of the group and the other two were his sister, Betty Minor, and a Negro by the name of Jerome Loper.

The appellant testified that although he had given Loper information of the money kept by Bouchelle in his home, he tried to dissuade Loper and Martin Blizzard from committing the crime, and his presence near the scene was not as a lookout but was an attempt to stop the crime and particularly to keep Blizzard from becoming involved, at the behest of his wife, who is the sister of Blizzard.

I

The appellant contends that a written confession signed by him at the North East police headquarters after his arrest, and without the advice of counsel, was not shown to have been made voluntarily and should not have been admitted into evidence.

The record shows that before making any statement the appellant was warned at length of his constitutional rights by Ser-

geant Elwood Stacy. In spite of the appellant's statement that he understood his rights, and that he had studied law for three years, Sergeant Stacy testified that he read to him from a printed card: " 'You have an absolute right to remain silent. If you choose to answer, your answers can be used against you in court. . . . You have the right to a lawyer. You have the right to talk privately with your lawyer before answering any questions, and to have him with you during questioning. I asked Mr. Minor if he understood this and he said he did.' "

"And then I read: 'If you desire to answer the questions without consulting a lawyer, or without a lawyer present, you have a right to stop any time and obtain the services of a lawyer.' And I asked him if he understood this right and he said he did."

"And then I read: 'If you cannot afford a lawyer one will be provided for you if you desire at no cost to you.' And I asked him if he understood that and he said he did."

"Then my next question was : 'Do you understand your rights as explained?' And he said yes. Then I said: 'Do you knowingly waive these rights and wish to talk to us about this matter?' And he said he would talk to us."

"I asked him did he fully understand all of his rights, and he said he understood them, that he had studied three years of law, and that he knew all his rights, had been knowing them for some time. And he said he did not want an attorney, that he would talk to us."

The record does not reveal any further urging or pressure from the police upon the appellant to make a confession, either oral or written. The pressure came from the appellant's wife, who was pregnant and crying, and told him she had already made a statement, and asked him to make one. Betty Minor, the wife, testified that she made her statement because she felt sorry for her brother, Martin Blizzard. She stated: "I understand we take the blame for my brother, so he wouldn't get in so much trouble."

Q. "You asked your husband to take the blame for your brother?

A. "Yes."

Mrs. Minor testified that Sergeant Stacy, out of the presence

of the appellant, asked her to talk to her husband to get him to make a statement because she had made one. Mrs. Minor also testified that at the time of their arrest in Salisbury, both she and her husband had asked the arresting officers for a lawyer but that their request was ignored. Goldie Blizzard, the mother of Mrs. Minor, testified that she was with her daughter when Sergeant Stacy said it would be better for both of them if she could get her husband to make a statement.

On rebuttal, Sergeant Stacy categorically denied that he had ever asked Mrs. Minor to talk to her husband to get him to make a statement because she had made one or that he had ever said to Mrs. Minor in the presence of her mother, Mrs. Blizzard, that it would be better for both of them if she (Mrs. Minor) could get her husband to make a statement. Moreover, on rebuttal, Corporal Chaffey and Sergeant Weir, the arresting officers, denied that either the appellant or his wife, Mrs. Betty Minor, requested a lawyer at the time of their arrest. Both officers testified that at the time of the arrest they gave both the appellant and his wife the *Miranda* warnings but took no statement from them, and that the appellant stated that he didn't need any attorney. The trial court found appellant's statement to be voluntary, and we agree.

The prohibitions set forth in *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, apply to law enforcement officers representing the State and not to persuasion by private persons. Speaking of the privilege against self-incrimination provided by the Fifth Amendment to the United States Constitution, the Supreme Court held: ". . . the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. . . . We are satisfied that all the principles embodied in the privilege apply to informal compulsion exerted by law enforcement officers during in-custody questioning." *Miranda, supra,* p. 1620. The Constitution does not protect a citizen from pressures exerted, as alleged in this case, by wifely tears and importuning, or the promptings of his own conscience.

*Miranda* also holds that the privilege against self-incrimination may be waived. "An express statement that the individual is willing to make a statement and does not want an attor-

ney followed closely by a statement could constitute a waiver."
*Miranda, supra,* p. 1628. Appellant stated explicitly that he did
not want an attorney, that he understood his rights. Thus, we
find that before making his statement, he was fully informed
that he was in an adversary situation, that he understood that
he need not make a statement, and that he clearly waived his
rights. That the appellant was advised that anything he said
"can" be used against him, rather than "can and will" be used
against him, seems immaterial in view of the summary of the
Court in *Miranda, supra,* p. 1630, which requires that a de-
fendant be notified "that anything he says can be used against
him in a court of law."

## II

The appellant next maintains that the court erred in allowing
the State to cross-examine the appellant regarding his criminal
record.

By voluntarily taking the stand to testify in his own defense,
against the advice of his counsel, the appellant placed his char-
acter in issue, and opened himself to questioning on cross-ex-
amination about his previous lengthy criminal record. *Jordan
v. State,* 219 Md. 36, 148 A. 2d 292, cert. denied, 361 U. S.
849; *Cousins v. State,* 230 Md. 2, 185 A. 2d 488; *Davis v.
State,* 237 Md. 97, 205 A. 2d 254, cert. denied, 382 U. S. 945;
*Mason v. State,* 242 Md. 707, 218 A. 2d 682; *Boone v. State,*
2 Md. App. 80, 103-107, 233 A. 2d 476. Appellant's prior crim-
inal record was relevant for the purpose of impeaching his tes-
timony. See *Boone v. State, supra,* for a comprehensive discus-
sion of the rule and a compilation of cases so holding.

## III

The appellant next alleges that the court committed preju-
dicial error by allowing the State to present to the jury portions
of his wife's extrajudicial statement to the police. By the State's
theory of the case, Betty Minor was an accomplice of the ap-
pellant, and her statements were not taken in the presence of
the appellant. Mrs. Minor was called as a witness for the de-
fense. During cross-examination, portions of her previous state-
ment were read to her. The court cautioned the jury several
times that her statement was not evidence and that the sole pur-

pose of asking the witness if she had made certain answers to questions asked her by the police was to impeach her direct testimony. Mrs. Minor denied having made most of these answers, and on re-direct examination she testified that she had made other statements which she could not remember, and that she was emotionally upset and "a nervous wreck" at the time she made the statements to the police.

The case of *Bruton v. United States,* 391 U. S. 123, 88 S. Ct. 1620, relied on by appellant, has no application here. The thrust of *Bruton* was that the defendant was denied his right to confront an adverse witness (a co-defendant) whose extrajudicial confession implicating defendant had been admitted in evidence against the witness whom the defendant had no recourse to contradict or cross-examine.

Since the questions asked Mrs. Minor on cross-examination in reference to her prior statement to the police were for the sole purpose of impeaching her testimony as a defense witness, we find appellant's contention to be without merit.

IV

The appellant next questions whether, without the use of the appellant's statement, there was sufficient corroboration of the testimony of the accomplices, Betty Minor and Martin Blizzard, to convict him. He also alleges as error that the verdict is against the weight of the evidence.

It is well established that in a jury trial this Court does not inquire into and measure the weight of the evidence, but determines only whether there is any relevant evidence to sustain the conviction. *Wilkins v. State,* 5 Md. App. 8, 245 A. 2d 80; *Cobb v. State,* 2 Md. App. 230, 234 A. 2d 155.

We have found that the extrajudicial statement given by the appellant was properly admitted. As to the amount of corroborative evidence necessary to support a confession, we held in *Robinson v. State,* 3 Md. App. 666, at page 674: "* * * the independent evidence necessary to support the confession need not be 'full and positive' proof of the *corpus delicti* and may be small in amount, if such proof, when considered with the confession, convinces the jury beyond a reasonable doubt of the guilt of the accused."

The testimony of Mr. and Mrs. Bouchelle, the victims of the robbery, proved the *corpus delicti.* The testimony of Martin Blizzard was corroborated in part by Mrs. Arlene Dean, who testified that she saw the automobile which Mrs. Minor was driving on the nights of December 28th and 29th. She also described another car which she saw on the grounds of the Bouchelle property, further corroborating the testimony of Blizzard, who said he was in the car of one participant while the appellant was in his wife's car.

We therefore find that there was sufficient corroborative evidence to support the testimony of the accomplices. *Boone v. State,* 3 Md. App. 11, 237 A. 2d 787; *Hopkins v. State,* 5 Md. App. 284, 287, 246 A. 2d 288.

There was legally sufficient evidence to submit the case to the jury.

## V

We find without merit the appellant's contention that he was prejudiced by remarks made by a witness' attorney. The defense failed to object to the first instance, and merely asked the court to caution the attorney on another occasion. Therefore the question was not properly preserved for appeal. Maryland Rule 1085. In addition the court carefully explained to the jury that statements made by an attorney are not evidence and should be disregarded.

## VI

The appellant maintains that certain questions posed by the court to Martin Blizzard during direct examination were leading and prejudicial; and that the court asked prejudicial questions of the appellant on cross-examination as to why he had not notified the police or the victims of the impending robbery which he maintained he was trying to prevent. There was no objection to the court's interrogation below, so that the question is not before this Court on appeal. Maryland Rule 1085. Furthermore, the questions do not, in the context of the testimony, appear to be prejudicial.

## VII

The sentence of fifteen years imposed was within limits prescribed by law and would therefore not constitute cruel and un-

usual punishment in violation of constitutional protections. *Charles v. State,* 1 Md. App. 222, 228 A. 2d 620. That others participated in the crime is irrelevant. A sentence will be reviewed by this Court only if it was dictated not by a sense of public duty but by passion, prejudice, ill will or any other unworthy motive. *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336. We find nothing in the record to warrant review of the sentence imposed in this case.

*Judgment affirmed.*