# BERNARD LORENZO PRATT v. STATE OF MARYLAND

[No. 326, September Term, 1969.]

*Decided March 19, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James C. Chapin* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County, Donald P. McLaughlin, Assistant State's Attorney for Prince George's County,* and *Gilbert Rosenthal, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The question presented on this appeal is whether the procedural safeguards required by *Miranda v. State of Arizona,* 384 U. S. 436, apply to a custodial interrogation of an accused conducted by a person employed by a mercantile establishment and commissioned by the Governor of this State to act as a policeman. We find that they do. Thus *Miranda* again requires reversal of a judgment because a statement was obtained from an accused and introduced in evidence without compliance with the *Miranda* standards. The judgment here was the conviction of Bernard Lorenzo Pratt (appellant) of grand larceny by a jury in the Circuit Court for Prince George's County and a sentence of two years imposed thereon.[1]

## FACTS

Evidence adduced by the State showed that William C. McKinley was employed by Montgomery Ward, Incorporated, as a security officer, at its store at 6200 Annapolis Road, Prince George's County. Asked what "official qualifications" he had to act in that capacity, he said, "I have been sworn as a state officer by the State of Maryland, by the governor of Maryland as a police officer to protect the property of Montgomery Wards." On 8 October 1968, about 7:00 P.M., he observed appellant climb upon the dock, the platform at the store where its trucks load and unload the store's merchandise. Ap-

---

1. Appellant was convicted on 16 May 1969 at a second trial on the charge against him. The jury failed to agree at the first trial.

222

pellant picked up a box and moved it towards the edge of the dock. McKinley hollered at him and he jumped off the dock "and pulled the box with him; and when I hollered, why he dropped the box about 15 feet out from the loading dock. * * * [H]e pulled the box to the edge of the dock and pulled it off the dock." Appellant ran around a trailer parked at the dock. McKinley chased him and yelled, "Stop or I will shoot." Appellant ran into the back of the store, "at the customers' entrance over by the furniture department." McKinley, running after him, blew about three blasts on his police whistle. Appellant was running down the aisle towards the front of the store. McKinley again blew his whistle. Someone grabbed at appellant and he got "knocked or * * * pushed over into the sewing machine department." He tried to run past McKinley who grabbed his leather coat. Appellant shrugged off his coat and McKinley grabbed him by the seat of his pants. "It took three of us to take him back * * * He was fighting so much I couldn't handle him by myself. I was afraid somebody in the store would get hurt besides myself." Appellant was taken to the security office. "We asked him a few questions after we got him in the security office * * * I asked him whether he was going to sell it for—." At this point defense counsel objected. At the bench counsel stated that the ground of his objection was that "we have no foundation here as to his *Miranda* rights, being advised of them." The court said it would not make any difference if he did not admit that he stole it. The objection was overruled. Before the jury McKinley was asked: "What was the conversation that you had with the Defendant regarding his activities on the loading dock and this box that you referred to?" The witness replied: "I asked Mr. Pratt if he was going to sell the sewing machine and he said no, he was going to keep it." There was no further conversation. "He was very uncooperative from then on." The box contained a sewing machine, the property of Montgomery Ward and was valued at $170. It was elicited that no merchandise is sold on the loading dock. Customers may

receive merchandise there they have purchased but must have an invoice or receipted bill. Appellant had none.

## THE LAW

The holding in *Miranda* was concisely set out at page 444:

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

It is patent, and the State so concedes, that the procedural safeguards specifically spelled out by *Miranda,* see *Robinson v. State,* 1 Md. App. 522, were not here demonstrated. *Hale v. State,* 5 Md. App. 326. And it is clear that the statement of the appellant introduced through the testimony of McKinley was obtained by the initiation of questioning by McKinley after appellant had been taken into custody or otherwise deprived of his freedom in a significant way.[2] *Myers v. State,* 3 Md. App. 534. It cannot be said to have been a volunteered statement within the meaning of *Miranda,* 384 U. S. at 478. And see *Carwell v. State,* 2 Md. App. 45. Further, it is immaterial whether the statement be considered inculpatory, which we think it was, or exculpatory;[3] the prosecution may not use either in violation of *Miranda.*

The only question is whether McKinley was a law enforcement officer within the contemplation of *Miranda.*

---

2. The interrogation does not have to take place at the police station. *Miranda, supra,* at 477. See *Jones v. State,* 2 Md. App. 429; *Mulligan v. State,* 6 Md. App. 600.

3. "If a statement were in fact truly exculpatory it would, of course, never be used by the prosecution." *Miranda, supra,* at 477.

224

In *Minor v. State*, 6 Md. App. 82, 87, we said that the prohibitions set forth in *Miranda* "apply to law enforcement officers representing the State and not to persuasion by private persons." See also *Carder v. State*, 5 Md. App. 531, 539. Here the State adduced that McKinley "was sworn as a State officer by the State of Maryland, by the governor of Maryland as a police officer to protect the property of Montgomery Wards." Md. Code, Art. 23, §§ 342-348, under the subtitle "Police" was in effect at the time appellant was taken in custody. Sections 342 and 348 provided, in relevant part, that any corporation operating a mercantile establishment in Maryland may apply to the Governor to commission such persons as the corporation may designate "to act as policemen" for the protection of the property of such corporation, and for the preservation of peace and good order in their respective premises.[4] Section 343 provided that the Governor, upon such application, may appoint such persons to be policemen, transmitting a commission issued to a person so appointed to such clerk's office in the State as the corporation designates. The powers and authority of a policeman so appointed were set forth in § 344. Upon taking and subscribing to the oath prescribed by "the fourth section of the first article of the Constitution" [5] before the clerk of the court to which the commission was sent, such policeman shall, after the recording of the oath, possess and exercise, in the counties and cities in which the prop-

---

4. The State refers only to Code, Art. 41, §§ 60-70, but these statutes are not applicable here. They provide for the appointment of special policemen upon application of the Governor of another State which owns or has an interest in any property situated in this State. Both §§ 342-348 of Art. 23 and §§ 60-70 of Art. 41 were repealed by Ch. 581, Acts 1969, effective 1 July 1969, which enacted new §§ 60-70 in lieu thereof.

5. The oath is prescribed by Art. I, § 6 of the Constitution of Maryland. "I, ...... ..........................., do swear, (or affirm, as the case may be,) that I will support the Constitution of the United States; and that I will be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws thereof; and that I will, to the best of my skill and judgment, diligently and faithfully, without partiality or prejudice, execute the office of ........................................., according to the Constitution and Laws of this State, * * *."

erty of the corporation for which he was appointed is situated, "all the authority and powers held and exercised by constables at common law [6] and under the statutes of this State,[7] and also all the authority and powers conferred by law on policemen in the City of Baltimore." Such policeman so appointed shall when on duty wear in plain view a metallic shield with the word "police" inscribed thereon, except when on detective duty, § 345. Unless the appointment was revoked and annulled by the Governor, which he could do at his pleasure, § 343, the power and authority of such policeman continued until the corporation at whose instance he was appointed gave a notice in writing that his services are no longer required, which notice shall be filed in the clerk's office where his commission was recorded and noted by the clerk upon the margin of the record where the commission and oath were recorded; "thereupon the power of such policeman shall cease and be determined," § 347. The compensation of such policeman shall be paid by the party upon whose recommendation he was appointed, § 346.

It is firmly established that a person appointed as a policeman under the authority of Code, Art. 23, § 343, is an officer of the State with power to arrest "for the protection of the property of the corporation requesting his appointment, and for the preservation of peace and good order on its premises." See *Balto. & Ohio R. Co. v. Strube,* 111 Md. 119, 127; *B. C. & A. Ry. Co. v. Ennalls,* 108 Md. 75, 78; *Tolchester Co. v. Scharnagl,* 105 Md. 199, 210; *Balto. & Ohio R. Co. v. Deck,* 102 Md. 669, 675. In *Tol-*

---

6. At the common law constables were armed with "very large powers" of arrest. *Blackstone's Commentaries on the Law* (Gavit) Book 1, Ch. 9, p. 146. Discussing arrests by officers without warrant, Blackstone said, "The constable, who has great authority with regard to arrests. He may, without warrant, arrest anyone for a breach of the peace, committed in his view, and carry him before a justice of the peace. And in case of felony actually committed, or a dangerous wounding, whereby felony is likely to ensue, he may upon probable suspicion, arrest the felon * * *." Id. Book 4, Ch. 21, pp. 871-872.

7. For police duties of constables prescribed by statute see Code, Art. 20, §§ 21-24. Constitution of Maryland, Art. IV, § 42 states that constables "shall be Conservators of the Peace."

*chester Imp. Co. v. Steinmeier,* 72 Md. 313, the Court said, at 317-319, that the person so appointed was "* * * primarily a State officer * * *. He took the oath taken by all other police officers. He was responsible to the State for the proper discharge of his duty, and not to the company. He was not answerable to the company but to the State, and could be indicted for malfeasance as any other State officer. His duty was the same as any other policeman or constable. * * * [T]he company had no *quasi* judicial power to order him to arrest anyone; and certainly none to restrain him in the exercise of his office when his sworn duty required him to do anything of the kind." In *Griffin v. State of Maryland,* 378 U. S. 130, the Supreme Court said, at 135, "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law."

The State here was bound by the evidence it adduced that McKinley "had been sworn as a state officer by the State of Maryland, by the Governor of Maryland as a public officer to protect the property of Montgomery Wards." With regard to the issue of the admissibility of the statement, the court could not have properly concluded, on the evidence before it, other than that McKinley was appointed and qualified as a policeman as provided by law, and purported to act under that authority when he took appellant in custody. We find it crystal clear that McKinley was a "law enforcement officer" within the meaning of *Miranda.*

As the statement of appellant was obtained by a law enforcement officer initiating questioning of him while he was in custody without the employment of the procedural safeguards required by *Miranda,* its introduction in evidence was reversible error. *Miranda* baldly stated that absent the warning it set out "* * * no evidence obtained as a result of interrogation can be used against [a defendant]." 384 U. S. at 479. A statement so

obtained is *per se* to be excluded; the State is permitted no opportunity to show that its admission was harmless error. *Mulligan v. State, supra,* at 603. That in testifying in his own behalf appellant denied making the statement or even being questioned is not material; the statement at that time was erroneously before the jury.

*Judgment reversed; case remanded for a new trial.*