## MARVIN BLACKIE GARNER *v.* STATE OF MARYLAND

[No. 134, September Term, 1972.]

*Decided December 4, 1972.*

The cause was argued before CARTER, GILBERT and MENCHINE, JJ.

*Louis Peregoff* and *William S. Cooper* for appellant.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Allen N. Horvitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Marvin Blackie Garner, was convicted by Judge Paul A. Dorf, sitting non-jury in the Criminal Court of Baltimore, of warehouse breaking and stealing property of the value of $5 and upwards and an attempt to obtain money by false pretense in violation of Md. Code, Art. 27, §§ 33 and 140, respectively. He was sentenced to 10 years for each conviction with the sentences to run concurrently. The appellant contends (1) that he was denied his right to genuine and effective representation under Art. 21 of the Declaration of Rights and the Sixth and Fourteenth Amendments to the Federal Constitution. He bases this contention on the fact that his counsel failed to argue (a) his motions for judgments of acquittal, (b) the merits of his defense at the close of

all the evidence, and (c) in mitigation of punishment at the time of the imposition of sentence. Under this contention he also claims that he was unduly pressured into agreeing not to require the State to produce again two witnesses who had previously testified when the trial began about two years prior to its conclusion. He further contends (2) that his right to due process was violated because his counsel was denied the opportunity to argue his motions for judgments of acquittal and the merits of his defense at the conclusion of all the evidence, (3) that the evidence was legally insufficient to justify his conviction for warehouse breaking and stealing property of the value of $5 and upwards, and (4) that the ten year sentence imposed for attempted false pretense was cruel and unusual punishment in violation of his constitutional rights.

The State's evidence consisted of the testimony of Charles Beck, general manager of the corporation whose building was broken into and Joseph Silverman, manager of a liquor store where the appellant attempted to cash a check.

Charles Beck's testimony showed that he was General Manager of John K. Eareckson and Company. On December 3, 1969, pursuant to normal procedure, the Company's bookkeeper was responsible for locking up the Company's place of business at the close of the business day. The next morning Mr. Beck discovered the premises had been broken into and eleven blank checks taken. Mr. Silverman's testimony showed that on December 11, 1969, the appellant entered a liquor store managed by Silverman and requested that he cash a $90 check drawn on the account of John K. Eareckson and Company and payable to James N. Lawson. He further stated that the appellant endorsed the name of the payee on the back of the check in his presence. When Silverman asked the appellant for some identification, he presented a social security card purporting to have been issued to John N. Lawson. Silverman detected that both the check and the card had been altered. He then went to a telephone and called the

police. The appellant appeared to have overheard the telephone conversation and ran out of the store.

At the conclusion of Beck's and Silverman's testimony, the appellant requested a continuance and the State concurred in his request.

The case was continued on May 7, 1970 and not resumed until January 10, 1972, about a year and seven months later. In the interim defense counsel was appointed to the District Court Bench and the trial judge appointed Mr. James McAllister as substitute defense counsel. At the resumption of the trial on January 10, 1972, the State rested its case. At that time the following transpired between the court and defense counsel:

> "MR. MC ALLISTER: * * * just for the record,
> [Defense counsel]  we make a motion for judgment of acquittal, for the record only.
> THE COURT: All right. Denied, at this time.
> MR. MC ALLISTER: Yes, And now, may I put my client on, * * *.
> THE COURT: All right."

The appellant then began his testimony. Immediately after the appellant took the witness stand, the following colloquy occurred between the court, the appellant, and his counsel:

> "THE COURT [addressing the appellant]:
> He [Mr. McAllister] discussed with you that the Court asked him to confer with you as to whether or not you wanted to have Mr. Silverman come back again and testify over again, and Mr. Beck testify over again; is that correct?
> (BY MR. MC ALLISTER):
> Q. You wish to have them come back again?

THE COURT: And, say the same thing over again in his presence; do you understand that?

(BY MR. MC ALLISTER):

Q. It will be the same testimony.

A. Yeah, I would like to have them back.

Q. Now, we discussed this, and in your discussion, I informed you that if they came back, the testimony would still be the same, the record would still be the same, and we understand this; don't we?

A. Yes.

Q. And, understanding this, and realizing, of course, that you have a Constitutional right to ask to have them come back, do you want them back, really?

A. If the record is going to remain the same, I can't see no point in having them come back.

Q. So, now, I'm going to ask a question, and I'm sure Judge Dorf will ask them later, do you want them back or not?

A. No, not at this point.

THE COURT: Your answer is "No", then; is that correct?

THE WITNESS: Correct.

MR. MC ALLISTER: All right. May I proceed, now, Judge?

THE COURT: Yes. Then, for this case, what we will do then is continue on where the case terminated as of May the 7th, 1970; is that correct? Because you have, in fact, reviewed the entire record, I'm sure, Mr. McAllister, and you have reviewed all the testimony and you are well familiar with all the testimony that took place prior to this?

MR. MC ALLISTER: Yes, Your Honor.

> THE COURT: All right. You may continue, at this time, with the defendant's case.
>
> MR. MC ALLISTER: Yes."

The appellant then testified that he had not broken into the place of business of John K. Eareckson and Company nor stolen any blank checks belonging to that Company. At the conclusion of his testimony, defense counsel inquired of the appellant, "Are you satisfied with the services I've rendered you, today?" to which he replied, "Yes, sir." At that time the appellant rested his case and the following colloquy occurred between the court and counsel:

> "THE COURT: Any additional testimony?
>
> MR. MC ALLISTER: No, Your Honor. But, for the record, I make a motion, for a directed verdict and judgment of acquittal.
>
> THE COURT: All right. Motion denied at this time. Any rebuttal testimony?
>
> MR. HORVITZ [Assistant State's Attorney]: No rebuttal, Your Honor.
>
> THE COURT: Any argument?
>
> MR. MC ALLISTER: No argument, Your Honor.
>
> MR. HORVITZ: The State would submit on the facts, Your Honor."

The court then proceeded to find the appellant guilty of unlawfully breaking into a warehouse and stealing property of the value of $5 and upwards and also guilty of an attempt to obtain $90 by false pretense. After the verdicts were rendered, defense counsel filed motions for a new trial in regard to both convictions. The motions were denied and defense counsel stated to the court, "We are ready for sentencing, Your Honor." The court

then asked the appellant if he desired to make any further statement before sentences were imposed and the appellant answered, "No." Sentences of ten years to run concurrently were imposed in each case, with credit given for about two years for which the appellant had been incarcerated as a result of the charges. Defense counsel then requested the court to consider a suspended sentence which the court refused to do. Defense counsel advised the appellant of his right to apply for a review of sentence and to appeal to this Court. Thereafter defense counsel asked the court to set bail which was fixed at $10,000 in each case.

## I

The record fails to disclose that the question of genuine and effective representation was raised at the trial below. The questions involved in contention 1 are therefore not before this Court for review. See Md. Rule 1085. Even if they were properly before us, all of the appellant's claims involved in this contention concern matters of trial tactics which are not grounds for relief. None of his claims are shown by the record to amount to a denial of "a genuine and effective representation." See *Guillon v. Warden,* 3 Md. App. 263, 266; *State v. Merchant,* 10 Md. App. 545, 551. It is further shown that when the appellant was asked by the court if he personally had anything to say in respect to sentencing, he replied in the negative. We conclude that contention 1 is without merit in any event.

## II

Since there was no objection taken to the court's action in regard to the matters alleged in contention 2 at the time of trial, they are likewise not properly before this Court for review. Md. Rule 1085. However, inasmuch as a decision of the constitutional questions involved seems desirable in the interest of avoiding further litigation in the instant case, we have determined to de-

cide them. In regard to the motions for judgments of acquittal involved in contention 2, the record shows that at the time they were made, defense counsel expressly stated to the trial court that he was making them "for the record" or "just for the record." We conclude that it was implicit in these explanations that counsel did not desire to be heard on either motion and therefore that it was clearly established that he had waived his right to argue the motions.

The appellant cites *Yopps v. State*, 228 Md. 204 and *Moore v. State*, 7 Md. App. 330 as authorities in support of his contention 2. However, the question presented in this contention is one step removed from the holdings in *Yopps* and *Moore*. In *Yopps* the Court held that the constitutional right of defense counsel to be heard had been violated. There defense counsel *expressly requested* the right to be heard in regard to the entire evidence at the time the verdict was rendered and the court denied his request. In *Moore* this Court held at p. 333 that "[t]he failure of appellant's counsel, after the court announced its verdict, to assert the right to present argument, as was done by defense counsel in *Yopps*, does not of itself constitute a waiver of such right." At p. 334 we further said "* * * for the waiver of a constitutional right to be effective, it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst*, 304 U. S. 458. * * *" In the instant case defense counsel did not remain silent in respect to his right to be heard as was the situation in *Moore* nor did he expressly request the right as was the case in *Yopps*. On the contrary, he stated to the court at the time both motions were made that they were "for the record" and "just for the record." The plain meaning of these statements was that the motions were made for the sole purpose of having "the record" preserve the appellant's right to challenge on appeal the correctness of any adverse ruling on them by the trial court. We conclude therefore that the circumstances here clearly establish that there was an intentional

relinquishment by defense counsel of his known right to present argument on the motions in question, and therefore a waiver by him of that right within the requirements of *Moore, supra.*

In respect to the appellant's claim that his counsel was denied the right to argue the merits of all the evidence, the record affirmatively shows to the contrary. It shows that at the conclusion of all the evidence the court inquired of counsel for both sides if there was "any argument" and defense counsel replied, "No argument, Your Honor." By this colloquy it is plainly shown that in reply to the court's expressed invitation to counsel to argue the case on its merits, defense counsel declined and thereby waived his right to do so.

## III

The appellant's contention 3 relates to the sufficiency of the evidence in respect to his conviction for warehouse breaking and stealing property of the value of $5 and upwards. We have held that to support a conviction of breaking and stealing under Md. Code, Art. 27, § 33, it is necessary to show both a breaking and "that there was a larceny amounting in value to $5.00 or more." See *Hyman v. State,* 4 Md. App. 636, 642; *Chittum v. State,* 1 Md. App. 205, 208. We agree that the evidence in the instant case was legally insufficient to establish that the market value of the eleven blank checks at the time of the taking amounted to $5 or more. The State has the burden of proving that the goods stolen were of the requisite value. See *Lehr v. State,* 2 Md. App. 776, 778. The test is market value at the time of the taking. See *Cofflin v. State,* 230 Md. 139, 140; *Lehr v. State, supra* at 778. In speaking of the value of a blank check as the subject of larceny, the Court of Appeals in *Felkner v. State,* 218 Md. 300, 310 held that if it was not drawn on any bank at the time it was stolen, "its value is only that of the paper on which it is printed plus the cost of printing." In so holding, the Court said at 310-311:

"* * * We think that the 'larceny value' of a stolen article is its market or actual value in the condition in which it was when it was stolen. *Jewell v. State,* 216 Md. 110, 113; and that the value of the blank checks in the case before us is not to be increased for purposes of prosecution because the takers forged and uttered them after they were stolen. * * *"

There was no evidence adduced to show the market value of the paper and printing which made up the eleven blank checks at the time they were stolen. We therefore conclude that the trial court was clearly in error in finding the appellant guilty of breaking and stealing property of the value of $5 and upwards. It is obvious to this Court that the market value of these blank checks cannot be established to amount to $5 or more and therefore this conviction will be reversed without a new trial.

## IV

The appellant's last contention is that the sentence imposed under his conviction for attempted false pretense is in violation of his constitutional right against cruel and unusual punishment guaranteed by the Eighth Amendment to the Federal Constitution. In *Love and Matthews v. State,* 6 Md. App. 639, 644, this Court said:

"* * * It is well settled that imposition of sentence in a criminal case is a matter within the province of the trial judge; and it will ordinarily not be reviewed on appeal when it is within the limits prescribed by law. *Turner v. State,* 5 Md. App. 332, 333 (1968). * * *"

The ten year sentence imposed for this conviction is within the statutory limits. See Md. Code, Art. 27, § 140. In *Minor v. State,* 6 Md. App. 82 at 91, we further held that a sentence will only be reviewed "if it was dictated not by a sense of public duty but by passion, prejudice, ill will or any other unworthy motive." We find nothing in

the record to show that the sentence was dictated in violation of the proscriptions set forth in *Minor* and shall therefore not review it in considering this appeal.

> *Judgment in indictment number 773 (storehouse breaking) reversed.*
>
> *Judgment in indictment number 774 (attempted false pretense) affirmed.*