Appellant, William Gruesbeck, appeals from the judgment of the Greene County Common Pleas Court, Juvenile Division, which found him delinquent by reason of aggravated arson.
Bernard Crowder, a private security guard at Beavercreek High School testified he responded to the report of a fire in a school locker during the lunch hour on May 30, 1996. Crowder said that after the fire was extinguished by the fire department he contacted the appellant as he had been identified by a student as being at the locker just before the fire occurred. Crowder said he interviewed Bill Gruesbeck in the security office and advised him that several students had seen him in the vicinity of the locker involved in the fire.
Crowder said Gruesbeck initially denied any involvement but upon further questioning admitted he threw a lit paper sack into the school locker. Crowder denied threatening Gruesbeck, but admitted he informed Gruesbeck that the matter was serious and if he made a mistake, it would be, "in his opinion a lot easier for everyone involved if he just went ahead and cooperated." (Tr. 14). Crowder indicated he did not advise Gruesbeck of his Miranda
rights before interviewing him.
On cross-examination, Crowder admitted that it was general knowledge at the school that he was a former Beavercreek police detective. He said Gruesbeck broke down crying after admitting that he set the fire.
The appellant testified he suffers from depression and had been hospitalized twice for it, in March of 1995 and March of 1996. He corroborated Crowder's testimony that Crowder told him it would be in his interest to tell the truth and cooperate with him. He stated he thought he made his admission to Crowder in the presence of the assistant principal, Larry West. He said he did not make his statement of his own free will, but because he was intimidated and afraid of going back into the hospital.
Appellant said Mr. West told him that if he confessed that West would tell the police it was just a prank. He said he did not understand at the time he made his admission that he would be criminally charged. (Tr. 40). Appellant was sixteen at the time of the incident. He believed he may have been on some medication at the time he was interviewed. (Tr. 41).
Ann Patterson, a student, testified that she saw two boys, one of whom was appellant, getting into the locker which later caught fire. (Tr. II, 6, 12). She saw the boys at the locker for 5 to 10 minutes between 12:15 and 12:30 p.m. (Tr. II, 7, 9). The boys were "fiddling" with something in the locker and giggling, but she could not tell what they were doing. (Tr. II, 9). She was unable to identify the other boy with Bill except to say that he was white and taller than Bill. (Tr. II, 18, 21). After 5 minutes after the boys left, smoke started coming from the locker. (Tr. II, 19). By the time the smoke started coming from the locker, the bell to change classes had rung and there were 10-15 people in the hallway where the locker was located. (Tr. II, 19). She said she saw nobody else go near the locker after Bill and the other boy left, but she also was in the hallway looking to meet friends and visit with them. (Tr. II, 8, 16-17).
David Vandenbos testified he is a fire investigator with the Beavercreek Fire Department and he conducted an investigation of the fire. He said the fire was a "set fire" which primarily caused heat damage or warping to the locker. The locker sustained discoloration from the fire as well. (Tr. 103). He identified State's Exhibits 1 and 2 are color Polaroid photographs depicting scorch marks inside the school locker involved.
Officer Robert Saxon, a Beavercreek police officer, denied that he directed Officer Crowder or any school officials in the investigation of the fire. (Tr. 70). He said he advised appellant of his Miranda rights in the presence of appellant's father after he learned appellant had already given a statement to Crowder. (Tr. 77).
In his first assignment of error, appellant contends the trial court erred in not suppressing his statements to Crowder because he did not waive his Miranda rights before speaking to Crowder.
In particular appellant contends Miranda applies because the police delegated their investigative responsibility to school officials in this case. He also argues he should have been "mirandized" because although he was not formally arrested at the time there was present such a restraint of movement that a reasonable person in appellant's position would have thought he was under arrest at the time of the interview.
In overruling the appellant's motion, the trial court found the investigation was not conducted at the direction of the police department and he was not subjected to "custodial interrogation" implicating the Miranda requirements.
Custodial interrogation as covered by the Miranda decision consists of questioning initiated by "law enforcement officers" after the accused is taken into custody or otherwise deprived of his freedom in any significant way. Miranda v. Arizona (1966),384 U.S. 436 at 444.
Because of this requirement and also because of the general doctrine that state action is a prerequisite to the application of constitutional protections, it is clear that Miranda does not govern interrogation by private citizens acting on their own.
It might be argued that the protections of Miranda would be appropriate where the defendant is questioned by a person who is not a government employee but who has employment responsibilities of a law enforcement nature, such as a private security guard. In such circumstances, it might be argued that Miranda protections should apply for such security personnel utilize detention, privacy, the appearance of authority, and psychologically coercive methods to facilitate fruitful interrogation. It also could be contended that in such cases the "state action" hurdle may be overcome by a public function analysis, i.e. that persons performing functions essentially like those left to governmental agencies are also subject to constitutional restraints. J. Novak, R. Rotunda J. Young, Constitutional Law 502-08 (2d Ed. 1983).
The courts, however, have rather consistently held that such persons as security officers, railroad detectives, insurance investigators, and private investigators are not required to comply with Miranda. See cases at LaFave, Criminal Procedure, Section 6.10.
A contrary result has sometimes been reached if the interrogator, though serving private security functions, has been given police powers by a governmental unit. See, Pratt v. State,9 Md. App. 220, 263 A.2d 247 (1970). In City of Grand Rapids v.Impens, 414 Mich. 667, 327 N.W.2d 278 (1982) the court held that a statement obtained by a private security guard who was an off-duty deputy sheriff was not governed by Miranda where the guard was acting in the interest of his private employer at the time.
One court has held that a retired police officer is not required to give the warnings if he is conducting the investigation for a private employer. United States v. Parr-Pla
(1977 CA 9 Nev) 549 F.2d 660, cert. den. 431 U.S. 972.
In State v. Ferratte (1985), 18 Ohio St.3d 106, the Ohio Supreme Court held that security personnel of the State Lottery Commission had no statutory duty to enforce the laws of Ohio nor were they vested with the powers to arrest. Accordingly, they were not "law enforcement officers" required to give Miranda
warnings.
In State v. Bolan (1971), 27 Ohio St.2d 15, the Ohio Supreme Court held that a department store security officer was not a "law enforcement officer" for Miranda purposes. In support of its decision the Court cited, inter alia, the case of People v. Shipp
(1968), 96 Ill. App.2d 364, 239 N.E.2d 296, wherein the court held there was no "custodial interrogation" for Miranda purposes as to a student's oral confessions of making a false alarm in response to a high school principal's questioning at the principal's office.
In State v. Giallombardo (1986), 29 Ohio App.3d 279, the Portage County court of Appeals held that a privately employed security guard is not a peace officer within the meaning of R.C.109.71 and 2935.01(B) and is not required to give Miranda
warnings.
Private person interrogation is within Miranda when the presence of the police and/or other circumstances indicate the questioner is acting on behalf of the police. "Police may not avoid Miranda by delegating the questioning to the victims of the crime or their relatives. A critical factor is whether the police officer supervised the interrogation. Wilson v. O'Leary,895 F.2d 378 (9th Cir. 1990).
There was no evidence in this case that the private security guard, Crowder, questioned the appellant at the instance or direction of Officer Saxon or any police officer.
The trial court did not expressly address the issue of whether the defendant's statement was involuntary. The court did note in its factual findings that Gruesbeck told one of the assistant principals that he was not coerced into making his admission. By implication, the court must have concluded the suppression motion was without merit on the voluntariness issue.
A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive conduct. State v. Otte
(1996), 74 Ohio St.3d 555, cert. den. 117 S.Ct. 109. The ultimate question of the voluntariness of a confession is an issue of law.Arizona v. Fulminante (1991), 499 U.S. 279. The voluntariness of a juvenile's confession is likewise to be considered from the totality of the circumstances. In re Watson (1989), 47 Ohio St.3d 86, cert. den. 495 U.S. 937. Among the circumstances to be considered are the juvenile's age, mentality, prior criminal experience, length and intensity and frequency of interrogation, physical deprivation or mistreatment, and existence of threat or inducement.
The interview of the appellant by Crowder was brief. He was told that the matter was serious and there were witnesses who could place him near the fire scene. Appellant admitted he was not threatened. Appellant felt intimidated by the interview and was concerned about being hospitalized again. We are satisfied from a review of the record that the appellant's statement was voluntarily given to Bernard Crowder. The assignment of error is accordingly overruled.
In his second assignment, appellant contends the trial court erred in not sustaining his motion for acquittal made of the conclusion of the State's case.
Pursuant to Ohio Rules of Criminal Procedure, Rule 29(A), a court shall enter a judgment of acquittal if the evidence is such that reasonable minds would conclude that a material element of the crime has not been proven beyond a reasonable doubt. See,State v. Bridgeman (1978), 55 Ohio St.2d 261.
Ann Patterson's testimony and the defendant's confession to Bernard Crowder were certainly sufficient evidence for reasonable minds to conclude the State had proven a prima-facie case.
R.C. 2909.02(A)(2) provides that no person by means of fire or explosion shall knowingly cause physical harm to an occupied structure. The appellant argues that the only physical damage was the scorching of the locker and that it was not part of the occupied structure, the school building. We disagree.
Physical harm to an occupied structure occurs when physical harm is caused to a property which has become attached to the occupied structure as a fixture. A fixture is something which is affixed to the realty so as to become a part of it.
In Masheter v. Boehm (1974), 37 Ohio St.2d 68, the Ohio Supreme Court held that determining whether an item is a fixture must be made in light of the particular facts of each case, taking into account such facts as the nature of the property, the manner in which it is annexed to the realty, the purpose for which the annexation is made, the intention to make it part of the realty, the degree of difficulty and damage to the severed property which such removal would cause.
State's Exhibits 1 and 2 clearly show the school lockers were meant to be part of the school building itself. The appellant's second assignment of error is overruled.
In his last assignment of error, appellant contends the judgment of the trial court was against the manifest weight of the evidence. There was some substantial and probative evidence to support the trial court's judgment. This assignment of error is overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
William F. Schenck
Robert K. Hendrix
Mary Beth Caudill
Hon. Robert Hutcheson